## FRANCIS BROS. & JELLETT v. HEINE SAFETY-BOILER CO.

## HEINE SAFETY-BOILER CO. v. FRANCIS BROS. & JELLETT.

(Circuit Court, E. D. Pennsylvania. January 16, 1902.)

1. CONTRACTS—CONSTRUCTION—DUTY OF COURT.

Where, in a contract on which an action is brought, the words used have no technical meaning which requires the testimony of experts to explain, it is the duty of the court to construe the contract in its plain and ordinary signification, having due regard to the character of the parties and the subject-matter.

**2. Same—"Nominal Horse Power"—Meaning of Term.**

> Where, in a contract for a boiler, it is stipulated that it shall have a "nominal capacity of 140 horse power," the phrase means a boiler of such size and dimensions, and having such heating surface and other elements, as are ordinarily and usually found associated with boilers described as boilers of 140 horse power.

Motions for New Trial.

See (C. C.) 105 Fed. 413.

Frank P. Prichard, for Francis Bros. & Jellett.

J. J. De Kinder and J. H. McNeal, for Heine Safety-Boiler Co.

J. B. McPHERSON, District Judge. When this case was decided by the court of appeals last year the nominal horse power of the boilers in controversy was declared to be one of the important matters to be considered, as will appear by the following quotation from the opinion (109 Fed. 842):

> "The specifications of the owner of the building as to nominal horse power of the boilers to be furnished, their capacity under ordinary firing, and their maximum capacity under test, concern matters of the first importance. They were fundamental provisions of the original contract for the work. Is it then to be believed that either of the parties to the subcontract intended thereby to supersede these essential requirements of the owner's specifications? Such a supposition is, we think, most unreasonable. We fail to find anything in this record to warrant the conclusion that so radical a departure from the primary contract was contemplated."

Upon the second trial the decision was put upon the meaning of the phrase "nominal horse power," and the pending motion has required me to reconsider the construction then given to these words. I am still of opinion, however, that the charge was correct, and I refer to it for the reasons that controlled my action. It can scarcely be doubted that it was my duty to construe the language of a written contract,—both parties having agreed that the words in question had no technical meaning such as would require the testimony of experts to explain,—and to construe it in its plain and ordinary signification, having due regard to the character of the parties and the subject-matter of the contract. I am still unable to see what other meaning the words can properly bear than the meaning thus given in the charge:

> "When this phrase was used, it meant to both parties a boiler of such size and dimension, and having such heating surface and other elements, as are ordinarily and usually found associated with boilers described as boilers of 140 horse power. They did not mean that the boiler they were asking for should be capable of developing 140 horse power, no more and no less; for, as I have said, the capacity of the boiler to do the work it was to do was provided for in two different clauses of the contract. I think they must have had in mind, for I can give the phrase no other meaning, the other elements to which I have referred, rather than the ability of the boilers to do work. Of course, the ability of the boiler to do work was an element in this phrase, and it enters into its meaning, no doubt, as they used it; but the matter of the capacity of the boiler to do work, as I have said several times, is otherwhere in the contract more precisely provided for."

It is, I think, not difficult to understand why the owner was insisting upon a nominal capacity of 140 horse power. If such a boiler was furnished, one of the size, dimensions, and heating sur-

face that are associated with boilers ordinarily so rated, he would be more likely to have an appliance that would be able to fulfill the two specific tests provided for in the contract,—one test for ordinary use, and the other for maximum power. The requirement was an additional precaution, and was not only not an immaterial matter, but, as the court of appeals has said, of the first importance, a fundamental provision, and an essential requirement of the owner's specifications. This being true, and the requirement being therefore a controlling consideration, it seemed to me upon the trial, and it still seems, that, as it was conceded by the Heine Boiler Company that the nominal capacity of the boilers in controversy was only 130 horse power, my duty required me to instruct the jury to find in favor of Francis Bros. & Jellett. Much of the testimony related to the test of maximum power, but, if I have correctly given the meaning of "nominal horse power," it is obvious that this testimony ceased to be important.

A new trial in each case is accordingly refused.